**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **GERALD NOTTMEYER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 04-cv-0901-MJR** |
| | ) | |
| **PRECISION ALLIANCE GROUP, LLC,** | ) | |
| **PRECISION SOYA OF ILLINOIS, and** | ) | |
| **PRECISION SOYA OF SOUTHERN** | ) | |
| **ILLINOIS, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM AND ORDER REGARDING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT, PLAINTIFF'S MOTION TO STRIKE AND VARIOUS
MOTIONS IN LIMINE**</u>

**REAGAN, District Judge:**

## I.  INTRODUCTION AND FACTUAL BACKGROUND

Plaintiff, Gerald Nottmeyer, began employment with a Defendant (all three Defendants are related parties) in 1998.  In April 2003, Plaintiff was discharged.  Plaintiff alleges that this discharge was due to his daughter, who is disabled within the meaning of the Americans with Disabilities Act, **42 U.S.C. § 12101** *et seq.*  ("ADA") and who was insured by Defendants by virtue of Plaintiff's employment.  Plaintiff timely filed a charge of discrimination, No. 280200315020, with the Equal Employment Opportunity Commission ("EEOC"), which issued a Notice of Right to Sue on September 17, 2004.

On December 8, 2004, Plaintiff filed suit in this Court.  He alleges violation of the ADA in that, by being terminated due to his daughter's disability, he has suffered loss of wages and other benefits as well as inconvenience, embarrassment and loss of enjoyment of life.  Plaintiff also

alleges that, because his daughter lost her insurance coverage when Plaintiff was discharged, Defendants have violated the Employee Retirement Income Security Act, **29 U.S.C. § 1001 *et seq.*** ("ERISA"), which prohibits retaliation against employees who exercise their rights under the Act.

Plaintiff's prayer for relief includes reinstatement in his former position, back pay, restoration of full benefits, payment of back benefits and attorneys' fees and costs.  He also prays for an injunction requiring Defendants and/or their employees to undergo training with regard to the nonretaliation provisions of ERISA.

After discovery, Defendants moved on November 18, 2005 for summary judgment (Doc.  30).  Plaintiff responded (Doc.  36) and Defendants replied (Doc.  41).  In addition to his response, Plaintiff moved to strike portions of the summary judgment record submitted by Defendants (Doc.  40).  Defendants replied to that motion (Doc.  42) and Plaintiff replied (Doc.  43).

Also outstanding are four motions in limine, all filed on February 10, 2006.  First, Plaintiff moved to exclude any mention of his participation in an Illinois Department of Agriculture investigation of his employer pursuant to a state court case unrelated to the case at bar (Doc.  58). This motion stands unopposed.

Second, Defendants moved to exclude evidence that they offered Plaintiff a severance package in exchange for a release of his claims (Doc.  59).  Plaintiff has responded (Doc.  65) and Defendants have replied (Doc.  68).

Third, Defendants moved to exclude any evidence concerning the same investigation by the Illinois Department of Agriculture mentioned by the Plaintiff (Doc.  60).  This motion stands unopposed.

Fourth, Defendants moved to exclude most evidence regarding Plaintiff's daughter

Danielle's medical condition (Doc. 61). Plaintiff has responded (Doc. 64) and Defendants have replied (Doc. 67).

Each outstanding motion will be dealt with in turn below.

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants' motion for summary judgment (Doc. 30) is supported by a memorandum and several exhibits. The motion itself was the subject of Plaintiff's motion to strike (Doc. 40). To have the appropriate record and only the appropriate record available for the summary judgment motion proper, the Court must first examine the motion to strike.

## A. PLAINTIFF'S MOTION TO STRIKE PORTIONS OF THE SUMMARY JUDGMENT RECORD

Plaintiff contends (Doc. 40) that ten items contained in Defendants' summary judgment record are inadmissible, six on hearsay grounds and four on the grounds that the evidence does not arise from the personal knowledge of an affiant. Defendants oppose each contention in their answer (Doc. 42). The Court will treat each item below.

### 1. Standard for Motions to Strike

Motions to strike are governed by **Fed. R. Civ. P. 12(f)**. That rule states that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Technically, the rule applies to complaints only. ***See, e.g., Pilgrim v. Trs. of Tufts Coll.*, 118 F.3d 864, 868 (1st Cir. 1997).** They are typically not available with regard to summary judgment motions. ***See, e.g., Equal Employment Opportunity Comm'n v. Admiral Maint. Serv., L.P.*, 174 F.R.D. 643, 645-46 (N.D. Ill. 1997); *Cobb v. Monarch Fin. Corp.*, 913 F. Supp. 1164, 1181 (N.D. Ill. 1995).** However, a number of courts have noted that

no other viable method exists for attacking the relevance and pertinence of such material, and have allowed such motions in this context. *See, e.g.*, *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, **224 F.R.D. 261, 263 (D.D.C. 2004).** Nevertheless, motions to strike are disfavored and are rarely granted. *See Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, **883 F.2d 1286, 1294 (7th Cir. 1989)**; *see also Williams v. Jader Fuel Co.*, **944 F.2d 1388, 1400 (7th Cir. 1991)**, *cert. denied*, **504 U.S. 957 (1992).** Thus this Court will not actually strike the portions of the summary judgment record that are the subject of the Plaintiff's motion. Instead, the Court will consider each item objected to by Plaintiff and determine whether it is properly part of the summary judgment record.

**2. Propriety of Including Items in the Summary Judgment Record**

Summary judgment is governed by **Fed. R. Civ. P. 56**. **Rule 56(e)** requires, in pertinent part, that

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. ... The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories or further affidavits.

The two phrases particularly at issue in the case at bar are "personal knowledge" and "admissible in evidence."

**a. "Personal Knowledge"**

Personal knowledge requires actual observation of events or other direct means of establishing facts in a person's mind. *See Automatic Radio Mfg. Co. v. Hazeltine Research Inc.*, **339 U.S. 827 (1950)**; *see also Payne*, **337 F.3d at 772.** Feelings, intuitions or suspicions are

4

inadequate.  *See Payne*, 337 F.3d at 772; *Visser v.  Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 659 (7th Cir.  1991).  Thus any facts about which the affiant does not have actual knowledge grounded in personal experience are inadmissible for the purposes of summary judgment.

### b.  "Admissible in Evidence"

Evidence presented in relation to summary judgment motions need not be in admissible form, but must be admissible in content.  *See Payne v.  Pauley*, 337 F.3d 767, 775 n.3 (7th Cir.  2003).  The hearsay rule prohibits witnesses to testify as to statements other than their own, when that testimony is offered to prove the truth of the matter asserted.  **Fed.  R.  Evid.  801, 802.**  But the statements themselves certainly would be admissible from another source, if relevant, for example from the original declarant.  *See, e.g.*, *Winskunas v.  Birnbaum*, 23 F.3d 1264, 1267-68 (7th Cir.  1994).  Hearsay testimony becoming non-hearsay testimony by virtue of a change of source constitutes a change in form, not merely a change in content.  *See Stinnet v.  Iron Works Gym/Executive Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir.  2002); *Eisenstadt v.  Centel Corp.*, 113 F.3d 738, 742 (7th Cir.  1997).  Thus any part of the summary judgment record that is hearsay is inadmissible for purposes of summary judgment.

### 3.  Consideration of Each Item Opposed by Plaintiffs

Plaintiff objects to statements contained in Paragraphs 4, 6, 7, 17, 18, 20 and 21 of the declaration of Gary Shepherd (Exhibit C in the summary judgment record).  Plaintiff also objects to statements contained in Paragraphs 9 and 10 of the declaration of Roseann Kujawa (Exhibit E in the summary judgment record).  The Court will treat each below.

### a.  Exhibit C, Declaration of Gary Shepherd

### 1.  Paragraph 4

In his declaration Shepherd said that "[Nottmeyer's] manager, however, was concerned about his ability to handle the electronic touch screen and other tasks required to do that job." Defendants assert that the statement is offered to show that they had longstanding concerns about Nottmeyer's performance. Although the managers may or may not have had such concerns, using a third party's statement as evidence thereof is hearsay. The Court will not consider this statement when ruling upon the summary judgment motion.

### 2. Paragraphs 6, 7 and 18

In these paragraphs Shepherd reveals Plaintiff's evaluation scores and compares them to those received by other employees. Although Shepherd certainly knows how he evaluated Plaintiff's performance, and the exact process is unclear from the record, it seems that others participated in the evaluation process, and Shepherd cannot testify to their opinions or motives. Additionally, the crux of the issue here is Plaintiff's *relative* performance. So while Shepherd is competent to testify regarding the fact of Plaintiff's ranking, without the records themselves there is no basis for his testimony regarding the basis for arriving at the ranking, that the rankings were consistent over time or that Plaintiff's relative ranking made him a prime candidate for termination. The Court will not consider these statements when ruling upon the summary judgment motion.

### 3. Paragraphs 17, 20 and 21

In paragraph 17 Shepherd describes a meeting in which the managers determined who should be terminated during a reduction in force. He states that "*we* made our decisions solely on job performance" and that "when Maue realized he was the only manager who did not select Kluemke, *he* changed his mind ..." (emphasis added). In paragraphs 20 and 21, Shepherd again refers to how *we* made decisions and what other managers were thinking "to the best of [his]

6

knowledge." These statements are not based on Shepherd's personal knowledge. Even if they are based on his interactions with other managers, they would be hearsay. To the extent that the statements refer to the thoughts or motives of others, the Court will not consider these statements when ruling upon the summary judgment motion.

### b. Exhibit E, Declaration of Roseann Kujawa

Roseann Kujawa administers Defendants' health insurance plan. In her affidavit, she states that others then or still employed by Defendants had health expenses higher than those of Plaintiff's daughter, and that not all employees terminated as part of the same reduction in force had high medical expenses. Kujawa is undoubtedly qualified to testify as to plain facts. Unlike paragraphs 6, 7 and 18 of Shepherd's affidavit, *supra*, where the purpose of mentioning the records was to show Plaintiff's relative performance, the purpose of mentioning records here is to provide counterexamples. In other words, Kujawa is testifying to facts contained in the records and not making comparisons. To establish whether employment decisions were or were not made on those facts may require greater foundation, but the facts themselves are not hearsay. The Court will consider these statements when ruling upon the summary judgment motion.

## B. SUMMARY JUDGMENT

Having disposed of the motion to strike, the Court may not consider the substance of the motion for summary judgment.

### 1. Standard for Summary Judgment

Summary judgment is proper if the pleadings, depositions, interrogatory answers, admissions and affidavits reveal that there is no genuine issue as to any material fact *and* that the moving party is entitled to judgment as a matter of law. ***Vukadinovich v. Board of Sch. Trs. of***

*North Newton Sch. Corp.*, **278 F.3d 693, 698-99 (7th Cir. 2002).**

The mere existence of an alleged factual dispute is not sufficient to defeat a summary judgment motion. *Anderson v. Liberty Lobby*, **477 U.S. 242, 247 (1986);** *Salvadori v. Franklin Sch. Dist.*, **293 F.3d 989, 996 (7th Cir. 2002).** Rather, to successfully oppose summary judgment, the nonmovant must present definite, competent evidence in rebuttal. *Vukadinovich*, **278 F.3d at 699.**

In the employment discrimination context, if a plaintiff cannot defeat a summary judgment motion on the strength of her proffered direct evidence, she may use the burden-shifting approach delineated in *McDonnell Douglas Corp. v. Green*, **411 U.S. 792, 802-04 (1973).** To prevail under this approach, the plaintiff first must establish a prima facie case of discrimination, which requires her to prove: (1) the plaintiff was a member of a protected class; (2) the plaintiff was performing her job satisfactorily; (3) the plaintiff suffered an adverse employment action; and (4) similarly situated employees who were not members of the protected class were treated more favorably. *Id.; Salvadori*, **293 F.3d at 996;** *O'Regan v. Arbitration Forums, Inc.*, **246 F.3d 975, 983 (7th Cir. 2001).**

If the plaintiff satisfies her burden as to this prima facie showing of discrimination, the burden then shifts to the defendant/employer to articulate a legitimate, nondiscriminatory reason for its decision. *Id.* If the employer does so, it rebuts the presumption of discrimination and shifts back to the plaintiff/employee the burden of showing that the employer's proffered reason was pretextual. *McDonnell Douglas*, **411 U.S. at 802;** *Michas v. Health Cost Controls of Ill., Inc.*, **209 F.3d 687, 692-93 (7th Cir. 2000).** The *McDonnell Douglas* analysis requires that a plaintiff provide at least "some basis for believing that the prohibited intent to retaliate was present," but not, at the

8

summary judgment stage, proof by a preponderance of the evidence. *See, e.g., Grottkau v. Sky Climber, Inc.*, 79 F.3d 70, 73 (7th Cir. 1996); *Little v. Cox's Supermarkets*, 71 F.3d 637, 642 (7th Cir. 1995). Even under this burden-shifting approach, however, the ultimate burden of proof that the employer discriminated remains on the plaintiff at all times. *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 398 (7th Cir. 1997).

The Seventh Circuit has remarked that this summary judgment standard is applied "with special scrutiny" to employment discrimination cases, "which often turn on issues of intent and credibility." *Krchnavy v. Limagrain Genetics Corp.*, 294 F.3d 871, 875 (7th Cir. 2002), *citing Bellaver v. Quanex Corp.*, 200 F.3d 495, 491 (7th Cir. 2000) *and Geier v. Medtronic, Inc.*, 99 F.3d 238, 240 (7th Cir. 1996).

## 2. Application of the Standard to the Case at Bar

### a. Count I: ADA

The ADA's prohibition on employment discrimination relevant to this case is codified at **42 U.S.C. § 12112(b)(4)**. That provision prohibits "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." The four elements of the prima facie case require a plaintiff to show: (1) that he was qualified for the job; (2) an adverse action; (3) that employer knew at the time of the adverse action that plaintiff had a relative or associate with a disability; and (4) that the case falls into a relevant category (expense, distraction, or association). *Larimer v. Int'l Bus. Machs. Corp.*, 370 F.3d 698, 700-02 (7th Cir. 2004). Defendants assert that Plaintiff cannot show that Defendants knew his daughter was disabled, that Defendants had any motive to discriminate or that Defendant's basis for terminating him was a

9

pretext for disability discrimination. Plaintiff disagrees with all three assertions.

From the record, it is possible that Defendants' managerial employees knew Plaintiff's daughter was disabled, perhaps severely enough to fall under the ADA. For example, in his deposition Tom Alcorn says he saw that Plaintiff's daughter was "a little bit slow" and had impaired speech. Steve Maue says in his deposition that he thought she sounded like a Down's Syndrome child. Though they might not have known anything about what qualifies for protection under the ADA, from these statements it is controvertible that they "did not know" Plaintiff's daughter was disabled. Clearly a material issue of fact exists with regard to the "known disability" requirement.

There also seems to be at least the possibility of a discriminatory motive on Defendants' part. At the time Plaintiff's daughter needed surgery, Defendants were changing their health plans in an effort to cut costs. Their rates had gone up, which both Defendants' manager and their insurance company representative state happened due to the amount of claims made. As an additional cost-cutting measure, Defendants decided that staff would have to be reduced. On the same day that decision was made, Roseann Kujawa received a $2,970 claim relating to a hospitalization for Plaintiff's daughter. Shortly thereafter, Kujawa prepared a summary of Plaintiff's daughter's claims. It is unclear whether similar summaries were prepared for other employees. Kujawa informed Wayne Michael (another eventually fired employee) that because of Plaintiff's daughter, Defendants were going to have to begin paying health expenses out of pocket. Though Kujawa says she did not share this information with the managers who made the termination decisions, the information was available to them (though they claim not to have accessed it). Coincidence does not imply causation or motive. Defendants have their own explanation for the

above sequence of events.  But the fact that both sides have an explanation of events conducive to their preferred outcome is the very definition of a "material issue of fact," and this is just the sort of controversy that might "turn on issues of intent and credibility" as contemplated by *Krchnavy*. Thus an issue of material fact exists with regard to the requirement of discriminatory motive.

Finally, there seems to be an issue of material fact with regard to whether Defendants' reasons for terminating Plaintiff were a pretext for employment discrimination. Defendants provide ample documentation that, in their estimation, Plaintiff was a substandard employee.  But Plaintiff also raises questions that cannot be dismissed out of hand.  One question is whether some terminated employees other than Plaintiff might in fact have been highly ranked on performance.  This case is not about other employees, but the facts might go to prove inconsistency on the part of Defendants' managers and thus reduce the credibility of their "non-pretextual" reasons for terminating Plaintiff. Another question is why, despite agreeing to consider seniority in their termination decisions, they discharged Plaintiff who was one of their most senior employees.  Plaintiff has provided at least "some basis for believing" that Defendants' stated justifications were pretextual as outlined by *Grottkau*, *Little* and similar cases. Again, these are issues of "intent and credibility" that translate into genuine issues of material fact.

Where substantial factual issues are in dispute, summary judgment is simply inappropriate.  Resolving all controversies in favor of the non-moving party (Plaintiff), it cannot be shown that no reasonable factfinder could rule for Plaintiff. This dispute is best left to a finder of fact, and the motion for summary judgment will be denied.

### b.  Count II: ERISA

As an alternative to his ADA claim, Plaintiff claims retaliatory firing under ERISA.

11

Under section 510 of ERISA, **29 U.S.C. § 1140**, it is "unlawful for any person to discharge ... or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... ." To establish the prima facie case under this provision, a plaintiff must prove that the loss of rights or benefits was a "motivating factor behind the termination." ***Meredith v. Navistar Int'l Transp. Corp.*, 935 F.2d 124, 127 (7th Cir. 1991).** The employer must have had "specific intent" to violate the statute. ***Teumer v. Gen. Motors Corp.*, 34 F.3d 542, 550 (7th Cir. 1994).** This is a somewhat higher standard than the prima facie case under the ADA. "But all this means is that since the forbidden retaliation is retaliation for claiming ERISA benefits, the plaintiff cannot prevail unless he ... presents evidence from which the trier of fact can infer that the defendant's motivation in taking the adverse action of which the plaintiff is complaining was indeed to thwart his right to benefits." ***Larimer*, 370 F.3d at 703.** And in these cases a plaintiff can avoid summary judgment "if the materials properly before the district court, *construed sympathetically*, allow for such a conclusion." ***Teumer*, 34 F.3d at 550. (emphasis added).**

It is this sympathetic construction that saves Plaintiff's claim. As discussed above in the context of the ADA, there is enough circumstantial evidence that points to a possibility of retaliatory firing that Plaintiff's allegations cannot be dismissed out of hand. In ***Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640 (7th Cir. 2002)**, the Seventh Circuit modified the application of *McDonnell Douglas* in the retaliation context: "the plaintiff [must] show that after filing [his claims for benefits, that] only he, and not any similarly situated employee who did not file [claims], was subjected to an adverse employment action even though he was performing his job in a satisfactory manner." **281 F.3d at 644.** Defendants point to evidence in the record that at least one

12

other employee who had similarly high medical expenses was retained during the time of their reduction in force.  But it is unclear from the record whether any other employee had a covered family member who the managers knew probably needed surgery, or would in some other way have significant *prospective* insurance expenses.  At a small facility like the one where Plaintiff worked there may have been no similarly situated employee.  As noted briefly above and more extensively in the record, the managers had cause to worry about increasing insurance expenses.  The record does not support Defendants' contention that there is no issue of material fact, thus summary judgment is inappropriate and the motion will be denied.

### III.  MOTIONS IN LIMINE

Plaintiff has filed one motion in limine (Doc.  58), and Defendants have filed three (Docs.  59, 60, 61).  Two are unopposed but will still be reviewed.  The Court deals with each below.

### A.    PLAINTIFF'S  MOTION  TO  EXCLUDE  HIS  PARTICIPATION  IN  AN INVESTIGATION AND/OR LAWSUIT

The Illinois Department of Agriculture investigated Defendants, resulting in a state court case brought in 2003.  That investigation and case are unrelated to the instant case.  Plaintiff cooperated with that investigation and was initially a plaintiff in the case, but voluntarily dismissed his claim.  Plaintiff moves to exclude any mention of his participation in that investigation or suit (Doc.  58).  The motion is unopposed. Because the factual matters in that investigation are entirely unrelated to the case at bar, and could confuse the jury or unduly prejudice Plaintiff, the motion will be granted.

### B.    DEFENDANTS'  MOTION  TO  EXCLUDE  THEIR  OFFER  OF  A  SEVERANCE

**PACKAGE**

Defendants have moved to exclude their offer to Plaintiff of a severance package in exchange for a waiver of his right to sue them in connection with his termination (Doc. 59). Such offers are routine. However, their routine nature does not automatically render them inadmissible and adds little to the analysis of the motion. The Court must dig deeper.

Defendants argue that the offer is inadmissible under Fed. R. Evid. 408, which excludes compromises and offers to compromise "a claim which was disputed as to either validity or amount." In his response (Doc. 65), Plaintiff contends that Rule 408 does not apply to the instant case because at the time when the severance offer was made, Plaintiff had not made any claim against Defendants. *See Cassino v. Reichhold Chems., Inc.*, 817 F.2d 1338, 1342 (9th Cir. 1987), *cert. denied*, 484 U.S. 1047 (1988)(age discrimination case). The precedential value of *Cassino* in the context of age discrimination cases has been cast into doubt, *see Haun v. Ideal Indus., Inc.*, 83 F.3d 541, 547 n.3 (5th Cir. 1996), but the principle is sound, *see, e.g., Deere & Co. v. Int'l Harvester Co.*, 710 F.2d 1551 (Fed. Cir. 1983); *United States v. Meadows*, 598 F.2d 984 (5th Cir. 1979); *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365 (10th Cir. 1977). Therefore it seems that the motion must be denied.

**C. DEFENDANTS' MOTION TO EXCLUDE AN INVESTIGATION AND LAWSUIT**

Defendants moved in limine (Doc. 60) to exclude evidence of the same investigation and trial mentioned by Plaintiff in his prior motion. The motion is unopposed. As noted above, that investigation and lawsuit are irrelevant to the case at bar. The motion will be granted.

**D. DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S DAUGHTER'S MEDICAL CONDITION**

Defendants moved in limine (Doc. 61) to preclude certain evidence relating to the medical condition of Plaintiff's daughter. They note their suspicion that Plaintiff will attempt at trial to use his daughter's medical condition to elicit sympathy from the jury that, while deserved, will unduly prejudice them and should therefore be excluded under **Fed. R. Evid. 403**. In their motion they also indicate their willingness to stipulate to Plaintiff's daughter's condition, to the degree necessary for trial and to the extent that the motion in limine is granted.

In his response (Doc. 64), Plaintiff argues that his daughter's condition, including its worsening over time (going from medication only to requiring surgery), must be explained to the jury so that they can understand that he was (allegedly) selected for termination because of her *anticipated* medical costs. Plaintiff also points out that in their summary judgment motion, as discussed above, Defendants dispute that they knew Plaintiff's daughter was disabled within the meaning of the ADA. In their reply (Doc. 67), Defendants argue that they do not dispute the nature of Plaintiff's daughter's condition, only the extent to which their managers knew about the likely future costs of her treatment.

The jury should understand, to the extent that it is relevant, the nature and progression of Plaintiff's daughter's condition. But Plaintiff will not be allowed to unfairly prejudice Defendants by engaging in an exhaustive or repetitive exposition of his daughter's sympathetic circumstances. Consequently, this evidence is admissible but must not be unduly highlighted or Rule 403 may come into play. The Court will deny the motion.

### IV.  CONCLUSION AND ORDER

For the reasons stated above, the Court **DENIES** Plaintiff's motion to strike (Doc. 40), **DENIES** Defendants' motion for summary judgment (Doc. 30), **GRANTS** Plaintiff's motion

in limine with respect to the unrelated investigation and trial (Doc. 58), **DENIES** Defendants'

motion in limine with respect to its severance offer (Doc. 59), **GRANTS** Defendants' motion in

limine with respect to the unrelated investigation and trial (Doc. 60), and **DENIES** Defendants'

motion in limine with respect to Plaintiff's daughter's medical condition (Doc. 61).

      **IT IS SO ORDERED.**

      **DATED this 28th day of February, 2006.**


                **s/Michael J.  Reagan**
                **MICHAEL J. REAGAN**
                **United States District Judge**